UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10998-RWZ

DEBORAH McBRIDE and JAMES McBRIDE

v.

AMERICAN HOME MORTGAGE SERVICING INC., *et al.*

ORDER

March 19, 2012

ZOBEL, D.J.

Deborah and James McBride bring this eight-count complaint seeking an injunction against eviction and sale or transfer of their property, reversal of foreclosure, and actual and punitive damages as a result of an allegedly illegal foreclosure proceeding. American Home Mortgage Servicing, Inc. ("AHMSI") and Deutsche Bank[1] have moved to dismiss all counts for failure to state claim.

**I. Background**

On or about November 4, 2005, the McBrides refinanced their home in Dedham, Massachusetts, with a $216,000 "30-year adjustable rate mortgage" from Ameriquest Mortgage Company ("Ameriquest"). (Docket # 1 Ex. A (Verified Complaint) ¶¶ 5, 12-13.) They allege that they had applied for a $139,000 loan with a 7% interest rate, but Ameriquest provided them with a $216,000 loan which they were "shocked" to see. (Id.

---

[1] The captioned defendant reads Deutsche Bank National Trust Company as trustee for Ameriquest Mortgage Securities, Inc., asset-backed pass-through certificates, Series 2005-R11s ("Deutsche Bank").

¶¶ 13-14, 17-18). Nevertheless, on November 4, 2005, they signed all the loan documents, but upon receipt of copies thereof on November 8, 2005, they attempted to rescind the loan. Ameriquest informed them that their request to rescind was too late. Plaintiffs then paid the mortgage until February 2007 when they fell behind. Ameriquest refused to entertain plaintiffs' requests for a payment plan and required full up-front payment of the arrearage. Although the plaintiffs then attempted to make their monthly mortgage payments from February to June 2007, Ameriquest declined to accept them.

In June 2007, CitiMortgage obtained the servicing rights of the loan. Around this time, the McBrides filed their first application for a loan modification. On March 25, 2008 Ameriquest recorded the assignment of the mortgage to Deutsche Bank at the Norfolk Registry of Deeds; the assignment was undated. In June 2009 AHMSI offered plaintiffs a loan modification.[2] The modification added $86,000 to the principal balance but did not contain an accounting of this additional amount. Plaintiffs rejected the proposed modification. In or around December 2009, they submitted a second application and received an offer from AHMSI in July 2010.[3] This time the offer included an increase of principal in the amount of $100,000. Because the plaintiffs believed they only owed $88,221 in arrearages and costs, they declined the second

---

[2] The complaint does not explain AHMSI's relationship to the plaintiffs' mortgage or note.

[3] Although the complaint is brought in Deutsche Bank's capacity "as trustee" for certain Ameriquest asset-backed pass-through certificates, it does not allege that Deutsche Bank is Ameriquest's successor in interest or is otherwise liable under any legal theory for Ameriquest's prior acts. Initially, CitiMortgage, Inc., was a defendant, and the complaint does allege that CitiMortgage was a successor in interest to Ameriquest; however, CitiMortgage has since been voluntarily dismissed without prejudice.

2

offer.  Plaintiffs completed a third application in July 2010 and a fourth in October 2010.  On December 3, 2010, before any response to the third and/or fourth applications, the foreclosure sale of their home took place.  They allege they were not aware that the foreclosure was to take place.   After contacting foreclosure counsel, they discovered that a certified letter notifying them of the foreclosure was at the post office and had not been delivered to their address.

The complaint is in eight counts: (I) breach of the duty of good faith and fair dealing; (II) breach of contract; (III) negligence; (IV) fraudulent transfer in violation of Mass. Gen. Laws ch. 244, § 14; (V) fraudulent transfer due to lack of standing; (VI) violation of the Equal Credit Opportunity Act ("ECOA") (15 U.S.C. § 1691(d)(6)); (VII) violation of  Mass. Gen. Laws ch. 93A; and (VIII) intentional infliction of emotional distress.  (Id. pgs. 9-16.)

**II.  Standard**

On a motion to dismiss, the "court takes as true all well-pleaded facts in the complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).  The inquiry is limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v.

Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility ..." Id. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id.

III. Analysis

### A. Breach of the Duty of Good Faith and Fair Dealing (Count I)

Plaintiffs allege that defendants, as "entities responsible for exercising the statutory power of sale," breached the common law obligation of good faith and fair dealing by proceeding with the foreclosure (1) in violation of Home Affordable Modification Program ("HAMP") guidelines while the McBrides' third and/or fourth modification request(s) was/were pending; and (2) because defendants did not provide plaintiffs with "additional notice" when a certified mailing receipt had not been returned to them.

Plaintiffs note that a foreclosing entity has an obligation to send notice to the buyer, citing Mass. Gen. Laws ch. 244, §14, however, they acknowledge that here such notice was sent. They point to no authority requiring a foreclosing entity to confirm that a homeowner actually received notice of the foreclosure or to provide some type of "additional notice" to the homeowner, nor does there appear to be any such authority. See e.g., Carmel Credit Union v Bondeson, 722 N.E.2d 1089, 1091-92 (Mass.App.Ct. 2002) ("requiring that the mortgage debtor actually receive the notice would pile unreasonable difficulty on the party charged with giving notice.... Notice by certified or regular mail is a common method of providing notice in the business, governmental and

4

legal contexts and is considered 'reasonably calculated' to provide actual notice") (internal citations omitted).

Plaintiffs' reliance on HAMP "Supplemental Directive 09-01" also does not advance their cause, as they do not have standing to enforce HAMP provisions absent defendants' violation of a contractual provision to which plaintiffs are parties. See Section III (B), infra. Accordingly, there is no basis to treat HAMP contractual provisions (which plaintiffs have no authority to enforce) as obligations pursuant to the Massachusetts common law duty to execute foreclosures in good faith. Nonetheless, "The basic rule of law applicable to the foreclosure of real estate mortgages is that 'a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'" Seppala & Aho Const. Co., Inc. v. Petersen, 367 N.E.2d 613, 616 (1977) (internal citations omitted). Typically this entails "mak[ing] reasonable efforts to sell the property for the highest value possible." Edry v. Rhode Island Hospital Trust Bank, 201 B.R. 604, 607 (Bankr. D. Mass. 1996). Plaintiffs do not make any allegations that the value received for their property or the process used in the foreclosure proceeding was inequitable.

**B. Breach of Contract (Count II)**

As a majority of federal courts have determined, there is no private right of action under HAMP. See Okoye v. Bank of New York Mellon, No. 10–11563–DPW, 2011 WL 3269686, at *7 n. 10 (D. Mass. 2011) (collecting cases). Nor are plaintiffs entitled to sue as third-party beneficiaries of the bank's contracts with the government. Zendejas v. GMAC Wholesale Mortg. Corp., No. 1:10–CV–00184 OWW GSA, 2010 WL

2490975, at *3 (E.D. Cal. 2010) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary ... qualified borrowers are incidental beneficiaries of the Agreement and do not have enforceable rights under [HAMP]"); Duff v. Federal Nat. Mortg. Ass'n, No. 2:11–cv–12474, 2012 WL 692120, at *5 (E.D. Mich. 2012) ("cases finding that mortgagors are not third-party beneficiaries to HAMP servicing agreements fall in line with ... [Supreme Court precedent] that breach of contract actions should not be used to create constructive private rights of action where none otherwise exist.").

## C. Negligence (Count III)

The McBrides allege that, pursuant to HAMP, defendants assumed a duty to consider applications for loan modifications in a "prompt and professional manner," and that defendants were negligent in repeatedly requesting duplicate documents, unreasonably delaying review of their application, and failing to provide a breakdown of the costs added to the principal balance for the offered modifications.

However, HAMP did not create such a duty of care. Brown v. Bank of America Corp., No. 10–11085, 2011 WL 1311278, *4 (D. Mass. 2011) ("while violation of a regulation such as HAMP may provide evidence of a breach of a duty otherwise owed, it does not create such a duty in the first place").

## D. Fraudulent Transfer (Count IV and V) , Equal Credit Opportunity Act (Count VI) and Mass. Gen. Laws ch. 93A Claim in Connection with Loan Origination (Count VII)

The complaint alleges that the foreclosure sale resulted in a fraudulent transfer

6

because: (1) it was not properly noticed; (2) Deutsche Bank failed to record a proper assignment of the mortgage prior to the foreclosure; and (3) there was no meeting of the minds during the formation of the loan.

First, as previously discussed the bank did not violate a notice obligation. See Section III (A), supra.

Second, plaintiffs were not parties to the assignment between Ameriquest and Deutsche Bank and the assignment did not grant them any interests or rights. They cannot, therefore, collaterally contest the assignment. Peterson v. GMAC Mortgage, LLC, 11-11115-RWZ, 2011 WL 5075613, *4 (D. Mass. Oct. 25, 2011). To the extent plaintiffs assert Deutsche Bank lacked standing to foreclose, their complaint disputes this premise – the assignment was recorded on March 25, 2008, more than two years before the sale.

Third, fraud must be pled with particularity. Fed. R. Civ. P. 9(b). Plaintiffs allege that the terms of the loan they initially applied for were not consistent with the terms in the loan they ultimately closed on. However, they do not allege that they were unaware of what they were signing, that they signed any document(s) under duress, or that the contents of any of the mortgage documents were misrepresented to them at the closing. Further, neither AHMSI nor Deutsche Bank are connected to the alleged improprieties during the loan's origination. Cf. Mae v. U.S. Bank, N.A. as Trustee, No. 10–13533–FJB, 2011 WL 2413319, *2 (Bkrtcy.D. Mass. Jun. 10, 2011) ("Count III, seeking damages against [assignee] for fraud by the loan originator [ ] in the origination of the loan, fails because it alleges no misrepresentation by [assignee], only by its

7

predecessor in interest, and is not viable against the assignee"); Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 545 (1989) ("principle that assignee stands in assignor's shoes ... has never been interpreted to mean that the assignee will be liable for all the assignor's wrongs.") (internal citations omitted).

This same gap between the original mortgage and defendants defeats plaintiffs' ECOA (15 U.S.C. § 1681(d)(2)) claim and Mass. Gen. Laws ch. 93A claim directed at the execution of the initial mortgage. McKinsi v. Bank of America, N.A., No. 09-11940-JGD, 2010 WL 3781841, *3 (D. Mass. Sept. 22, 2010) (dismissing Mass. Gen. Laws ch. 93A claims against assignee of mortgage where "Bank did not set loan terms, [ ] enter into [the] loan ... [or] wrongfully entice the plaintiff to enter into the loan [ ]. All of these events occurred before the bank was involved"). In addition, ECOA claims are subject to a two-year statute of limitations from the date of occurrence of the violation (15 U.S.C. §1691e(f)). The improprieties of which plaintiffs complain occurred at the initial loan transaction in November 2005 and therefore fall outside the statutory period for bringing a claim.

### E. Mass. Gen. Laws ch. 93A Claims Unrelated to Mortgage Loan Origination (Count VII)

Aside from conduct at the inception of the loan already addressed, plaintiffs allege that the following conduct violates Mass. Gen. Laws ch. 93A: (1) the mortgage secured by the loan was fraudulently transferred; (2) the foreclosure sale was not postponed after they submitted their third modification; and (3) the HAMP modification process was handled "unjustly and unfairly" (e.g. unreasonable delays and not

including breakdowns of costs added to the principal balance of the loan).

Mass. Gen. Laws ch. 93A declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The statute "requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous," and causes "substantial injury to consumers or other businesspersons." Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 37 (1st Cir. 2008) (internal brackets omitted); Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc., 445 Mass. 790, 840 N.E.2d 526 (2006). Injury under chapter 93A means economic injury in the traditional sense. Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, *255 (1st Cir. 2010) (plaintiff suffering no economic loss cannot maintain an action under Mass. Gen. Laws ch. 93A).

As discussed, the undated assignment between Ameriquest and Deutsche Bank was recorded on March 5, 2008, and therefore was effective at least as of the record date, which was over two years before the foreclosure. Plaintiffs also fail to explain why recording an undated assignment falls within a statutory or common law conception of unfairness or why such action is "immoral, unethical, oppressive or unscrupulous," nor do they identify any economic injury attributable to this conduct.

Plaintiffs' allegations regarding HAMP violations are similarly deficient. While some courts have recognized that "A violation of HAMP that is unfair or deceptive in and of itself could, [ ] create a viable claim under Chapter 93A even though HAMP does not provide a private cause of action." Kozaryn v. Ocwen Loan Servicing, LLC, 784

9

F.Supp.2d 100, 102 (D. Mass. 2011). A plaintiff claiming a HAMP-based Mass. Gen. Laws ch. 93A violation still must allege: (1) a violation of the HAMP guidelines; (2) actions that were unfair and deceptive within the meaning of ch. 93A; and (3) economic injury. Id. at 103; Kassner v. Chase Home Finance LLC, No. 11-10643-RWZ, 2012 WL 260392, at *9 (D. Mass. Jan. 27, 2012); Jasty, 528 F.3d at 37. "Not every technical violation of HAMP should expose a servicer to Chapter 93A liability." Morris v. BAC Home Loans Servicing, L.P., 775 F.Supp.2d 255, 259, 2011 WL 1226974, *7 (D. Mass. April 4, 2011). Here, plaintiffs fail to plead what specific compulsory statutory or guideline provisions of HAMP were violated, the precise nature of the alleged "unreasonable delays," or that these actions caused them cognizable economic injury, other than the conclusory statement that "damages should be paid." (Docket # 1 Ex. A ¶ 93.)

**F. Intentional Infliction of Emotional Distress (Count VIII)**

Finally, plaintiffs allege that transferring legal title of their property by means of a wrongful foreclosure caused them severe emotional distress.

> For a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, [ ](2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171, 180 (1982).

The complaint does not set forth any facts to show that defendants intended to cause plaintiffs emotional distress. Further, as the court recognized in Moore v.

10

Mortgage Electronic Registration Systems., Inc., No. 10–cv–241–JL, 2012 WL 253834, *21 (D.N.H. 2012), "while home foreclosure is a terrible event and likely fraught with unique emotions and angst," foreclosures, even ones that may involve improper conduct, do not readily "go beyond all possible bounds of decency," nor are they "atrocious and utterly intolerable in a civilized community." The allegations made here are likewise insufficient to meet the high-bar of establishing an intentional infliction of emotional distress claim as a matter of law.

## IV. Conclusion

Defendants' motions to dismiss (Docket ## 10, 13) are ALLOWED. Judgment may be entered dismissing the complaint.

|  |  |
|---|---|
| March 19, 2012 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |